UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| ELIZABETH VANLISHOUT, individually and as the Guardian of her son, ANDREW ERICKSON-GONCZOL, an incapacitated person,<br><br>　　　　　　　　　　*Plaintiffs*,<br><br>v.<br><br>WESTERN POWER SPORTS, ~~INC.~~ **LLC**, **ANYNG ENTERPRISE CO., LTD.**, FLY RACING CO., and ARROWHEAD ENGINEERED PRODUCTS, INC.,<br><br>　　　　　　　　　　*Defendants*. | Case No. 1-23-cv-00072-CRH<br><br><br>**AMENDED** COMPLAINT AND JURY TRIAL DEMAND |

¶1　Plaintiffs, Elizabeth VanLishout, individually and as the Guardian of her son, Andrew Erickson-Gonczol, an incapacitated person, and pursuant to stipulation of the parties, file this **Amended** Complaint ("Complaint") against Defendants **Western Power Sports, LLC**, formerly known as Western Power Sports, Inc., **AnYng Enterprise Co., Ltd.**, Fly Racing Co., Arrowhead Engineered Products, Inc., and allege and state as follows: [amendments are set forth in bold underlined typeface]

I.　PARTIES

¶2　Plaintiff, Elizabeth VanLishout, is an individual and a resident of Hettinger County, North Dakota and she is the mother of Andrew Erickson-Gonczol.

¶3　Plaintiff, Andrew Erickson-Gonczol is an individual and a resident of Hettinger County, North Dakota, and a person who has been deemed incapacitated by the District Court of the County of Hettinger. He is now 27 years old.

¶4　Defendant Western Power Sports, **LLC, formerly known as** Western Power Sports, Inc., is

a business entity with its principal place of business at 601 E. Gowen Road, Boise, Idaho, 83716. [Hereinafter referred to as WPS.]

¶5    Defendant WPS has at all relevant times conducted regular and substantial business in the state of North Dakota both directly and through its wholly owned companies including but not limited to Fly Racing Co. Defendant WPS has been at all relevant times the parent company and corporate owner of defendant Fly Racing Co., and therefore it is legally responsible for any misconduct, product defects and harm resulting from the actions or inactions of Fly Racing Co.

¶6    Defendant Fly Racing Co. is a business entity with its principal place of business at 601 E. Gowen Road, Boise, Idaho, 82716. [Hereinafter referred to as Fly Racing.]

¶7    Defendant Fly Racing has at all relevant times conducted regular and substantial business in the state of North Dakota both directly and through its authorized retail outlets by supplying, marketing and selling its products including helmets for use on and off road for head and brain protection.

¶8    Defendant Arrowhead Engineered Products, Inc. is a business entity with its principal place of business at 3705 95th Avenue N.E. in Blaine, Minnesota, 55014. [Hereinafter referred to as Arrowhead.]

¶9    Defendant Arrowhead is the principal or parent company and/or corporate owner of defendant WPS and therefore it is legally responsible for any misconduct, product defects and harm resulting from the actions or inactions of WPS and/or Fly Racing. Defendant Arrowhead has at all relevant times conducted regular and substantial business in the state of North Dakota both directly and through its authorized retail outlets by supplying, marketing and selling its products herein.

¶10   **Defendant AnYng Enterprise Co., Ltd. is a Taiwanese company with a principal place of business in Tainan City, Taiwan. [Hereinafter referred to as AnYng.] At all relevant times,**

**AnYng has been in the business of manufacturing, selling and supplying helmets to Defendant Western Power Sports, LLC, formerly known as Western Power Sports, Inc.**

## II.   JURISDICTION AND VENUE

¶11   This Court has jurisdiction over the subject matter of this case because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

¶12   This Court has jurisdiction over Defendants because they have purposefully availed themselves of the privileges and benefits of conducting business in the State of North Dakota. Defendants marketed their products in the State of North Dakota.

¶13   The Plaintiff, Andrew Erickson-Gonczol, was wearing and using a helmet marketed, supplied and sold in the State of North Dakota by the defendants. The plaintiff suffered a catastrophic brain injury while wearing the defendants' helmet in the State of North Dakota. The plaintiff's injuries are directly related to the misconduct and product defects alleged below. As such, traditional notions of fair play and substantial justice will not be offended by this Court exercising jurisdiction over Defendants.

¶14   Venue is proper in this Court and in this District because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. 28 U.S.C. § 1391(b)(2). Specifically, Defendants caused their products to be sold through a retail dealer in Dickinson, North Dakota. Further, the plaintiff was wearing the helmet described below and injured in Bismarck, North Dakota.

## III.   FACTUAL BACKGROUND

¶15   On August 7, 2021, 25 years old Andrew Erickson-Gonczol was operating a motorcycle and wearing, for head/brain protection, a motorcycle helmet designed, manufactured, supplied,

marketed and sold by the named defendants. Andrew's helmet was a Fly Racing Kinetic K 120 (also referenced as a "Fly 245") which was manufactured in Taiwan in 2019. [Hereinafter referenced as "the helmet.]

¶16  "The helmet" was sold as a new product by Platinum Motor Sports, Inc. on May 18, 2020. At the time of the incident described below, "the helmet" was in the same condition it was in at the time of its marketing and sale.

¶17  On the morning of August 7, 2021, the plaintiff was wearing protective equipment including "the helmet" for head/brain protection and he was riding on a dirt track when he was caused to fall with his motorcycle. As he was falling to the dirt track, Andrew's helmeted head struck the dirt track. The plaintiff was then unresponsive.

¶18  During the impact between Andrew's helmeted-head and the dirt track, Andrew sustained an acute subdural hemorrhage along the right cerebral convexity with mild right to left midline shift, which then caused among other injuries significant intracranial swelling. These injuries and others to be documented were caused by the negligence, carelessness and defective design of "the helmet" as described below.

¶19  Upon admission to the hospital, Andrew was examined and then underwent a right frontal parietal decompressive craniectomy in an effort to address his acute head/brain injury.

¶20  Andrew suffered a severe brain injury that has resulted in significant medical complications and both mental and physical dysfunction. He has been hospitalized extensively with limited prospects of ever improving.

¶21  Andrew's injuries are permanent, catastrophic, and life-altering. The unfortunate reality for Andrew is that he will never live independently as a result of his injuries and will need continuous care, twenty-four hours a day and seven days a week for the rest of his life.

¶22  As the direct result of the design defects of "the helmet" and the negligence of the defendants as described below, the Plaintiff has in the past suffered significant physical injuries and medical complications, which in turn have resulted in permanent disabilities, pain, suffering, loss of function, the inability to care for himself and expenses associated with these losses. Further, the plaintiff will for the remainder of his life suffer financial losses and expenses directly related to his brain injuries and dysfunction.

## CLAIMS FOR RELIEF

### Claim No. 1: Strict Liability – Design Defect

¶23  Each of the foregoing paragraphs is incorporated herein for all purposes.

¶24  At the time "the helmet" was designed, manufactured, sold, and distributed by the Defendants, it was causally defective in design, causing it to be unreasonably dangerous, and unsafe for its intended purpose. The design defects include, but is not limited to the following:

a. failing to design and manufacture "the helmet" with necessary components to attenuate and absorb the foreseeable forces so that upon impact "the helmet" would minimize and/or reduce the forces and energy directed to the brain;

b. designing and manufacturing "the helmet" with a shell and shock attenuating system that was unreasonably dangerous because it was incapable of adequately attenuating the impact forces for which the product was marketed and sold;

c. designing "the helmet" without including components to minimize the linear and rotational forces of foreseeable impacts, thereby rendering it unreasonably dangerous, despite their awareness of the need to do so;

d. failing to properly and adequately test "the helmet", thereby producing a defectively designed product incapable of minimizing the risk of brain injury;

e. marketing a defectively designed helmet because it did not include available components needed to minimize the risk of brain injury during helmeted-head impacts;

f. other defects in the design and manufacture of "the helmet" that may be discovered during the course of this matter.

¶25    These defects rendered "the helmet" unreasonably dangerous as designed taking into account the utility of the product and the risks involved.

¶26    These defects rendered "the helmet" unreasonably dangerous" because the helmet was not as safe and did not provide the protection against brain injury that an ordinary consumer would expect.

¶27    These defects rendered "the helmet" defective because the risks of brain injury caused by the inadequately designed features outweighed the benefits of a safer feasible alternative design that in all reasonable probability would have prevented or significantly reduced the risk of the injury in question without substantially impairing "the helmet's utility".

¶28    The above-referenced design defects were the producing cause of Andrew's injuries and Plaintiffs' damages.

¶29    As a direct and proximate result of the above-referenced design defects, Andrew Erickson-Gonczol suffered past and future economic and non-economic damages as defined by North Dakota law.

¶30    As a direct and proximate result of the above-referenced design defects, Elizabeth VanLishout has suffered past economic and non-economic damages as defined by North Dakota law.

Claim No. 2: Strict Liability – Failure to Warn and/or Instruct

¶31    Each of the foregoing paragraphs is incorporated herein for all purposes.

¶32    At the time "the helmet" was marketed, the defendants marketed other helmets for the same type usage and which included designed safety features that provided significantly greater protection against brain injury than "the helmet" in question.

¶33 In the marketing of "the helmet", the defendants failed to include warnings or instructions or other information to inform consumers of the significantly greater protection against brain injury which defendants' other helmet models provided.

¶34 The absence of warnings, instructions or other information to adequately inform consumers/users of the significantly greater protection against brain injury which some of the defendants' other helmet models provided warrants strict liability via a failure to warn.

¶35 The above referenced failure to warn, instruct or otherwise inform consumers/users of other helmets with significantly greater protection against brain injury constituted a defect and it was a producing cause of Andrew's injuries and Plaintiffs' damages.

¶36 As a direct and proximate result of the above-referenced failure to warn and/or instruct, Andrew Erickson-Gonczol suffered past and future economic and non-economic damages as defined by North Dakota law.

¶37 As a direct and proximate result of the above-referenced failure to warn and/or instruct, Elizabeth VanLishout has suffered past economic and non-economic damages as defined by North Dakota law.

Claim No. 3: Negligence

¶38 Each of the foregoing paragraphs is incorporated herein for all purposes.

¶39 The defendants' actions and inactions constitute carelessness and negligence in the design, manufacture, marketing, supplying and selling "the helmet" both generally in the following specific respects:

    a. "the helmet" left the possession or control of the Defendants in a defective and unreasonably dangerous condition;

b. the defendants design of "the helmet" fell below the standard of reasonable care because the defendant knew or should have known that this product did not include safety features to mitigate the impact forces that cause foreseeable harm to the wearer's brain;

c. the defendants marketed of this helmet without including necessary safety features it knew were available and necessary to reduce the risk(s) that the helmet user would suffer brain injury in foreseeable incidents;

d. the defendants marketed of this helmet without providing warnings, instructions or other information informing consumers/users that "the helmet" did not furnish the same level of protection against brain injury that some of its other model helmets furnished;

e. the defendants intentionally compromised the protective capabilities of "the helmet" by not including components essential to mitigate the risk of brain injury, which they knew was foreseeable and which they knew other helmet models were equipped to do;

f. the defendants designed "the helmet" to meet a minimum safety test standard rather than design it to minimize the risk of foreseeable brain injuries, which they knew the helmet could do if designed beyond compliance with a minimum test standard;

g. failing to design, manufacture and market "the helmet" in accordance with the state of the art in head/brain protection;

¶40  The above referenced negligence and careless misconduct was a producing cause of Andrew's injuries and Plaintiffs' damages.

¶41    As a direct and proximate result of the above-referenced negligence, Andrew Erickson-Gonczol suffered past and future economic and non-economic damages as defined by North Dakota law.

¶42    As a direct and proximate result of the above-referenced negligence, Elizabeth VanLishout has suffered past economic and non-economic damages as defined by North Dakota law.

WHEREFORE, Plaintiffs demand judgment against the defendants for the following:

a. Past and future economic damages in an amount not less than $75,000 to be determined by the jury;

b. Past and future non-econonmic damages in an amount not less than $75,000 to be determined by the jury;

c. For costs and disbursements incurred in this action; and

d. For such other relief as the Court deems fair and just.

DEMAND FOR JURY

¶43    Plaintiffs demand a jury trial.

RESPECTFULLY submitted this 31st day of July, 2023.

_/s/_

Larry E. Coben (Admitted Pro Hac Vice, AZ Bar ID# 015673, PA Bar ID# 17523)
lcoben@anapolweiss.com
Jo Ann Niemi (Admitted Pro Hac Vice, AZ Bar ID # 020873, PA Bar ID# 326595)
jniemi@anapolweiss.com
ANAPOL WEISS
8700 E. Vista Bonita Drive, Suite 268
Scottsdale, AZ 85255
(480) 515-4745

Thomas A. Dickson (ND Bar ID# 03800)
tdickson@dicksonlaw.com

        DICKSON LAW OFFICE
        P.O. Box 1896
        Bismarck, ND 58502-1896
        (701) 222-4400

        *Attorneys for Plaintiffs*